R. D. STEVENSON, Commissioner of
Revenue, Department of Revenue,
State of Alaska, Appellant,

v.

Lloyd BURGESS and Wanda
Burgess, Appellees.

No. 2791.

Supreme Court of Alaska.

Oct. 28, 1977.

Joseph K. Donohue, Asst. Atty. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellant.

Charles E. Cole, Fairbanks, for appellees.

OPINION

Before BOOCHEVER, C. J., RABINOWITZ, CONNOR and BURKE, JJ., and DIMOND, Justice Pro Tem.

BURKE, Justice.

This controversy centers on whether the statute of limitations in the Alaska Net Income Tax Act is tolled upon the taxpayers' failure to file notice of an amended federal tax return upon which an additional state tax would be computed.

Lloyd and Wanda Burgess, while residents of the State of Alaska, filed their Alaska income tax returns for the years 1965 and 1966 and paid the state the amounts shown by such returns to be due

and owing.[1] In 1969, the Burgesses moved and changed their residency to the State of Washington.

On or about July 20, 1971, the Internal Revenue Service (IRS) audited the Burgesses' federal income tax returns. On July 27, 1971, the Burgesses, pursuant to 26 U.S.C. § 6501(c)(4), executed waivers entitled Consent Fixing Period of Limitations (IRS Form 872) which extended the statute of limitations on assessment and collection of federal income taxes until March 31, 1972.[2] On that same day, the Burgesses also executed a Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Over Assessment (IRS Form 870). Pursuant to this latter waiver, the Burgesses acquiesced in an additional assessment and collection of deficiencies of tax in the amounts of $30,384.99 for 1965 and $31,877.95 for 1966. This waiver also expired on March 31, 1972.

During this period, the Burgesses were represented by legal counsel and a certified public accountant based in Seattle, Washington. It is undisputed that the Burgesses and their advisors failed to notify the State of Alaska of the adjustments of the Burgesses' 1965–1966 federal income tax liability which arose out of the 1971 audit.[3]

1. AS 43.20.300 provides:

   *References to Internal Revenue Code.* (a) The provisions of the Internal Revenue Code as now in effect or hereafter amended mentioned in this chapter are incorporated in this chapter by reference and have effect as though fully set out in this chapter. (b) When portions of the Internal Revenue Code incorporated by reference as provided in (a) of this section refer to rules and regulations adopted by the United States Commissioner of Internal Revenue, or hereafter adopted, they are regarded as regulations adopted by the department under and in accord with the provisions of this chapter, unless and until the department adopts specific regulations in place of them conformable with this chapter.

   The state income tax is based on a percentage of the taxpayer's federal income tax liability. AS 43.20.010(a) provides:

   *Tax on individuals, fiduciaries, and corporations.* (a) There is levied and there shall be collected and paid for each taxable year upon the net income of every resident and nonresident individual and fiduciary that is required to make a return and pay a tax under the federal income tax law a tax equal to 16 per cent of the total income tax that would be payable for the same taxable year to the United States at the federal tax rates in effect on December 31, 1963, under the provisions of chapter 1 of subtitle A of the 1954 Internal Revenue Code, Public Law 591, 83rd Congress, 2nd Session, as amended, upon all income derived from sources within the state.

2. AS 43.20.200(b) at the time of the litigation provided:

   (b) The same period of limitation upon the assessment and collection of taxes imposed under this chapter and the same exceptions to it shall apply as provided under §§ 6501, 6502(a), and 6503(a) of the Internal Revenue Code of 1954.

   26 U.S.C. § 6501(a) provides:

   (a) *General rule.* Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

   26 U.S.C. § 6501(c) tolls the period of limitation embodied in 26 U.S.C. § 6501(a) under certain circumstances and states in pertinent part:

   (c) *Exceptions*

   (4) *Extension by agreement.* Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

   AS 43.20.200(b) as amended by Ch. 70 SLA 1975 restructures the statutory regime of the Alaska Income Tax Act and now provides:

   In the case of additional tax due by reason of a modification, recomputation, or determination of deficiency in a taxpayer's federal income tax return, the period of limitation on assessment commences from the date that the notice required in § 30(d) of this chapter is filed and if no notice is filed the tax may be assessed at any time.

3. AS 43.20.030(d) provides:

   (d) A taxpayer, upon request by the department, shall furnish to the department a true and correct copy of the tax return which he

The Alaska Department of Revenue first received notice of these federal income tax adjustments on May 22, 1972, pursuant to the Department's Exchange-of-Information Agreement with the federal government. In mid-October 1972, the Burgesses received a letter from the Department, dated October 10, 1972, notifying them that it had been informed of their 1965 and 1966 federal tax adjustments and requesting that they make appropriate revisions in their state income tax returns for those years. This the Burgesses failed to do. On December 1, 1972, the Department assessed state income tax deficiencies against the Burgesses for tax years 1965 and 1966 in the amounts of $11,072.28 and $14,274.40, respectively.

The Burgesses protested these deficiency assessments on the ground that they were barred by the statute of limitations.[4] At their request, a formal hearing was held pursuant to AS 43.20.280(a)[5] before Frederick P. Boetsch, Director of Audit, at the Department of Revenue in Juneau, Alaska, on April 9, 1973.

On July 15, 1973, Mr. Boetsch handed down his decision holding that the notification of adjustment of federal liability required by AS 43.20.030(d) "imposes a requirement on the taxpayer to file a return which has equal import with the original return." Thus, the decision held that since the Burgesses had failed to file these notices, the statute of limitations had not commenced to run on these disputed assessments. Consequently, the Department's December 1, 1972, assessments were not barred by the statute of limitations.

On September 14, 1973, the Burgesses filed a complaint in the superior court in Fairbanks seeking to overturn the decision of the Department and to prohibit collection of the assessments. Oral argument of this case was held before Superior Court Judge James R. Blair on December 4, 1975. This action was, at all times, treated by the court and by the parties as an appeal from the decision of an administrative body.

The Department of Revenue presented three basic arguments in the lower court. It contended that the notification requirement constituted a separate return and that the statute of limitations did not commence until the filing of the notice. Second, it argued that the original statute of limitations was tolled by the failure to provide such notice. Finally, it advocated that should the court find that the statute of limitations had otherwise expired, the Burgesses were barred from asserting it as a defense by the doctrine of equitable estoppel.

The superior court reversed the decision of the Department of Revenue and ruled in favor of the Burgesses. The superior court held that the notification required by AS 43.20.030(d) was merely an amended return which related back to the filing of the original returns and that the relevant statute of limitations period, even as extended by the taxpayers' consents, had expired. Furthermore, the superior court held that although "[a]ll of the equities favor the state," it could not rule in favor of the state because it was not sitting as a court of equity. As a

has filed with the United States Collector of Internal Revenue. Every taxpayer *shall notify* the department in writing of *any alteration in, or modification of,* his federal income tax return and of a recomputation of tax or determination of deficiency (whether with or without assessment). A full statement of the facts shall accompany this notice. The notice shall be filed within 20 days after the modification, recomputation, or determination of deficiency, and the taxpayer shall pay the additional tax or penalty under this chapter. (emphasis added).

4. 26 U.S.C. § 6501(a) as adopted by AS 43.20.-200(b). Both sections are reproduced at note 2 *supra.*

5. AS 43.20.280(a) provides:

*Taxpayers' remedies.* (a) A person aggrieved by the action of the department in fixing the amount of a tax or in imposing a penalty may apply to the department within 60 days from the date of the notice required to be given to him by the department, giving notice of the grievance, and request a hearing. At the hearing the department may subpoena witnesses and may administer oaths and make inquiries necessary to determine the amount of the tax due to the state, and if a correction is warranted, the department shall make the correction after the hearing.

result it did not invoke the state's theory of equitable estoppel. This appeal followed.

At the threshold this court is presented with the issue of whether the superior court erred in substituting its judgment for that of the Department of Revenue[6] in holding that the notification required by AS 43.20.-030(d)[7] was not a separate return for the purposes of the period of limitation provided by AS 43.20.200(b).[8]

The standard for judicial review of administrative decisions was recently restated by this court in *Alaska Pub. Util. Comm'n v. Munic. of Anchorage*, 555 P.2d 262, 266 (Alaska 1976).[9]

In *Kelly v. Zamarello*, 486 P.2d 906, 917 (Alaska 1971), we stated that 'the reasonable basis approach should be used for the most part in cases concerning administrative expertise as to either complex subject matter or fundamental policy formulations.' Where, however, the question at issue concerns constitutional or statutory interpretations having little to do with the Commission's expertise or particularized knowledge, it is considered to fall into the realm of special competency of the courts. Here, as in *State v. Aleut Corp.*, we find no reason not to use conventional review and construction techniques as to the meaning of the statute at issue. The question presented for review here is whether AS 42.05.431 limits the statutory authority of the Commission to regulate rates when present or proposed bond covenants are involved. This is primarily a question of statutory interpretation and legislative intent. It is a question of whether 'the administrative agency has acted within the scope of its authority' and concerns 'statutory interpretations requiring the special competency

of the courts.' Therefore, the reasonable basis test is not the appropriate standard of review. (footnotes omitted).

The state argues that the application of the substitution of judgment standard, would be erroneous because the interpretation of AS 43.20.030(d) requires particularized knowledge of state and federal tax procedures. The Burgesses counter that the controversy is one of statutory interpretation and hence eligible for the substitution of judgment analysis.

■ In the case at bar, the central issue is whether the failure of the Burgesses to file the notification required by AS 43.20.-030(d) estops them from pleading the defense of the statute of limitations embodied in AS 43.20.200(b). Such a determination does not involve any complex technical subject matter or fundamental policy formulation requiring the Department of Revenue's special expertise. Rather, it requires an evaluation of the estoppel doctrine in relation to the statutory duty to file notice. Such a role is within the special competency of the judiciary and consequently we hold that the lower court did not err in substituting its judgment for that of the Department of Revenue. *See Department of Revenue v. Gibson*, 544 P.2d 851 (Alaska 1975).

On the merits, the state bases its case on two major contentions. First, it argues that the superior court erred in holding that the Burgesses were not estopped from invoking the bar of the statute of limitations on assessment of Alaska income tax by reason of their failure to give notice of modification in their federal tax assessment. Second, it maintains that the superior court erred in holding that the Burgess-

---

6. The decision of Frederick P. Boetsch, Director of Audit—Department of Revenue states in pertinent part:

   [T]he taxpayers were required to file a return as provided in AS 43.20.030(d) resulting from the modification of their federal income tax return and the determination of a deficiency on July 20, 1971. Since taxpayers failed to file a return based on the federal adjustment, the period of assessment and collection has not yet expired. The assessment of taxes on

December 31, 1972 was proper and not barred by the Statute of Limitations.

7. *See* note 3 *supra.*

8. *See* note 2 *supra.*

9. *See also State v. Aleut Corp.*, 541 P.2d 730, 736 (Alaska 1975); *Mukluk Freight Lines, Inc. v. Nabors Alaska Drilling, Inc.*, 516 P.2d 408, 412 (Alaska 1973); *Kelly v. Zamarello*, 486 P.2d 906, 917 (Alaska 1971).

es' failure to file notice of a modification in their federal tax assessment in accordance with AS 43.20.030(d) did not toll the applicable period of limitations on assessment of Alaska income taxes. Given our disposition of this controversy on the issue of estoppel, we find it unnecessary to reach the state's second contention of error.

The state bases its position on the superior court's statement that:

If the Court were sitting as a court of equity in this matter, it would very clearly rule in favor of the State. All of the equities favor the State. Unfortunately *the law does not.* (emphasis added).

The state seems to read this statement as a denial of the power of the court to sit both at law and at equity and develops a historical argument to the contrary. This is a misreading of the court's words. The superior court appears only to have found that a legal alternative existed, *i. e.,* its duty to interpret the statute precluded use of its equity powers. *Cf. American National Bank of Denver v. Christensen,* 28 Colo. App. 501, 476 P.2d 281, 286 (1970). In its opinion, the superior court emphasized statutory construction in concluding that the required filing of notice did not amount to a "return" and that therefore no tolling of the statute was possible, since under the statutory scheme, only failure to file a "return" tolled the limitations period. Although it did not so state, the opinion implied that the availability of a statutory solution precluded resort to equitable estoppel.

The superior court's conclusion that equitable estoppel was unavailable misperceives the role of estoppel in relation to statutes of limitation.

This court first considered the issue of whether the doctrine of equitable estoppel is available as a bar to inequitable reliance on statutes of limitation in *Groseth v. Ness,* 421 P.2d 624 (Alaska 1966). In *Groseth,* we adopted the rule as stated by the United States Supreme Court in *Glus v. Brooklyn E. Dist. Terminal:* [10]

The principle is that where one party has by his representations or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage. And although the cases to which this principle is to be applied are not as well defined as could be wished, the general doctrine is well understood and is applied by courts of law as well as equity where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim.

421 P.2d at 630. It is contended by the state that the conduct of the taxpayers meets the requirements needed to trigger estoppel articulated in *Tide Water Oil Co. v. Commissioner of Internal Revenue,* 29 B.T.A. 1208, 1218 (1934) which lists:

(1) conduct, acts, language, or silence amounting to a misrepresentation or a concealment of the existence of a material fact; (2) the truth concerning that fact must be unknown to the other party who claims the benefit of the estoppel; (3) the party claiming the benefit must have relied upon the conduct, acts, language, or silence, of the other party and must have been led to act upon the work or conduct of the other.

The state claims that these requirements were met in the following fashion:

1. The Department of Revenue was unaware of the adjustment in the taxpayers' federal income tax return.

2. The taxpayers negligently failed to notify the Department of Revenue within the statutory time limit.

3. The taxpayers' silence misled the Department into believing that no federal adjustment had been made.

4. The loss of revenue to the state is directly attributable to the failure of the taxpayers to comply with the notice requirement.

---

**10.** 359 U.S. 231, 234, 79 S.Ct. 760, 762, 3 L.Ed.2d 770, 773 (1959), *quoting from Union*

*Mutual Life Insurance Co. of Maine v. Wilkinson,* 13 Wall. 222, 20 L.Ed. 617 (1872).

The taxpayers' main counter to this argument is that *Groseth, supra,* states:

> To establish an equitable estoppel it is generally necessary that the party seeking to assert it show that the other party made some misrepresentation, or false statement, or acted fraudulently and that he reasonably relied on such acts or representations of the other party, and due to such reliance did not institute suit timely.

421 P.2d at 632 n. 23. They urge that their conduct did not amount to misrepresentation, false statement, or fraud. Moreover, they argue that where silence is alleged as constituting the estoppel, silence amounts to misrepresentation or concealment only where there is a duty to speak and the silence is misleading.

The taxpayers' argument contains one critical flaw: its failure to recognize the significance of the notice provisions of AS 43.20.030(d).

In *Groseth v. Ness, supra,* while recognizing that "[t]here is authority to the effect that equitable estoppel requires more than inaction or silence," we also indicated that this rule applies to "a *person who has no obligation to speak or act.*"[11] We further observed:

> [T]here can be circumstances where inaction or silence combined with acts or representations can give rise to an appropriate situation calling for the application of the [equitable] estoppel doctrine.[12]

The instant case, we believe, provides one example of the sort of circumstances where the doctrine should apply.

█ We read AS 43.20.030(d) as creating a duty to speak when it requires a notice of modification of a taxpayer's federal income tax return. The failure of the Burgesses to notify the Department of Revenue of the modification in their federal income tax liability for 1965 and 1966 constitutes a breach of that duty *and amounted to the concealment of a material fact.* The state,

to its detriment, relying on that lack of notice, as it reasonably could, failed to institute the statutory mechanism for collection of additional taxes.[13] Under these circumstances, we hold that the Burgesses are estopped from asserting the protection of the statute of limitations embodied in AS 43.20.200(b).

REVERSED.

MATTHEWS, J., not participating.

---

11. 421 P.2d at 632 n. 25 (citation omitted; emphasis added).

12. *Id.*

13. We are not impressed with the taxpayers' argument that there was no evidence of such reliance on the part of the state.