LOUISIANA–PACIFIC CORPORATION,
Appellant,

v.

STATE of Alaska, DEPARTMENT OF REVENUE, Wilson Condon, Commissioner, Appellee.

No. S–9198.

Supreme Court of Alaska.

May 4, 2001.

Rehearing Denied July 18, 2001.

Donna C. Willard, Law Offices of Donna C. Willard, Anchorage, and Jeffrey M. Vesely and Richard E. Nielsen, Pillsbury, Madison & Sutro, San Francisco, CA, for Appellant.

Stephen C. Slotnick, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Louisiana–Pacific Corporation sought and received a refund of income taxes paid to the State for the years 1988 to 1991. After a subsequent audit, the State Department of Revenue demanded repayment of the refunded taxes on the ground that Louisiana–Pacific did not request the refund within the period permitted by the statute of limitations. Maintaining that the statute of limitations was stayed by waiver agreements that it had reached with the Internal Revenue Service, Louisiana–Pacific refused to repay the refund. The State sued and filed for summary judgment, which the superior court granted. Louisiana–Pacific appeals.

## II. FACTS AND PROCEEDINGS

Between 1988 and 1992, Louisiana–Pacific Corporation operated the Ketchikan pulp mill through its subsidiary, the Ketchikan Pulp Company. These operations generated taxable income in Alaska. Accordingly, Louisiana–Pacific filed state income tax returns in the years 1988–91 and paid taxes in the following amounts:

| Tax Year | Filing Date | Amount of Tax |
|---|---|---|
| 1988 | August 18, 1989 | $3,904,820.20 |
| 1989 | August 22, 1990 | $2,040,208.24 |
| 1990 | August 9, 1991 | $ 648,435.59 |
| 1991 | September 9, 1992 | $ 133,398.14 |

On June 26, 1996, more than three years after filing the last return, Louisiana–Pacific filed amended state corporate net income tax returns for the years 1988–91, claiming a refund totaling $470,837.95.

Louisiana–Pacific claimed the refund because it believed that it had used the incorrect apportionment fraction in calculating its Alaska taxes. An apportionment fraction is the portion of a corporation's income earned in a particular state.[1] The portion of Louisiana–Pacific's income earned in Alaska is then taxable in Alaska. Louisiana–Pacific argued that it had not included the receipts from the sales of short-term securities in the sales factor[2] in the denominator of its apportionment fraction. Including these receipts in the denominator would reduce the size of Louisiana–Pacific's apportionment fraction for its Alaska operations and hence the amount of income taxable by the State of Alaska.[3] Although the issue on appeal is whether Louisiana–Pacific's refund claim was filed within the time allowed by the Alaska Net Income Tax Act's (ANITA's) statute of limitations, the State disagrees with the theory asserted by Louisiana–Pacific in its amended returns.

In accordance with Department of Revenue policy, the Department paid the refund promptly before evaluating the merits of Louisiana–Pacific's claim. The Department issued a refund of $470,947.95, the amount Louisiana–Pacific had claimed in addition to a $110 overpayment noted in its records.

| Tax Year | Amount of Refund |
|---|---|
| 1988 | $226,852.64 |
| 1989 | $182,501.66 |
| 1990 | $ 54,137.01 |
| 1991 | $ 7,346.64 |
| Overpayment | $ 110.00 |
| Total | $470,947.95 |

After a subsequent audit, the Department determined that Louisiana–Pacific had filed its refund claims after the state statute of limitations had run. Accordingly, the Department sent Louisiana–Pacific an assess-

---

1. See Multistate Tax Compact, Article IV.9, AS 43.19.010; see also State, Dep't of Revenue v. OSG Bulk Ships, Inc., 961 P.2d 399, 403–04 (Alaska 1998).

2. The sales factor constitutes one of the three factors which make up the apportionment fraction. See Multistate Tax Compact, Article IV.9 & 15, AS 43.19.010; OSG Bulk Ships, 961 P.2d at 403–04.

3. The numerator of the apportionment fraction is the amount of income earned in Alaska. The denominator represents the company's total income. The higher the denominator, the lower the Alaska tax burden, provided that Alaska income remains the same. See Multistate Tax Compact, Article IV.9, AS 43.19.010.

ment and demand for repayment on November 12, 1996 and a second demand on January 31, 1997. Louisiana–Pacific refused to return the refund, relying on its agreements with the federal government to extend the statute of limitations for the determination of its federal taxes in 1988–91.

The State sued Louisiana–Pacific in March 1998, claiming that erroneous refunds are a debt to the State under AS 43.10.032(a)(3). The State filed a motion for summary judgment in January 1999, and Louisiana–Pacific opposed it, filing a cross-motion for summary judgment in February. The superior court agreed with the State, and entered judgment in its favor in June 1999. Louisiana–Pacific appeals, arguing that its waiver agreements with the IRS extend the state statute of limitations for Alaska taxes.

## III. *STANDARD OF REVIEW*

■ We will affirm a grant of summary judgment if the record presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[4] When determining whether the case presents genuine issues of fact, we draw all reasonable inferences in favor of the non-moving party.[5]

■ In this case, portions of Alaska's income tax scheme modify or create an exception from Alaska's incorporation of particular federal Internal Revenue Code (IRC) provisions. "This is a matter of pure statutory construction which is not within the particu-

lar expertise of the agency and which requires us to exercise our independent judgment."[6]

## IV. *DISCUSSION*

In this case we must interpret the Alaska statutes that define the limitations period for filing an income tax refund. The State argues that Alaska's tax statutes clearly prescribe the time for filing an income tax refund. The parties agree that Louisiana–Pacific exceeded the three-year statute of limitations described by AS 43.05.275.[7] Louisiana–Pacific filed for a refund on June 26, 1996, almost four years after it filed its return for tax year 1991. For all the other disputed tax years, the time elapsed between the original filing date and the claim for a refund exceeded four years. Louisiana–Pacific also concedes that it never entered into an agreement with the State to extend the statute of limitations.

Although Louisiana–Pacific admits that it exceeded the time to file for a refund and that it did not agree with the State to waive the statute of limitations, Louisiana–Pacific turns the court's attention to the exception in AS 43.05.275(a). That exception refers to AS 43.20.021, the portion of ANITA that incorporates the federal Internal Revenue Code:[8]

*Internal Revenue Code adopted by reference.* (a) Sections 26 U.S.C. [§§ ]1–1399, and 6001–7872 (Internal Revenue Code), as amended, are adopted by reference as a part of this chapter. These portions of the

---

4. *See In re Estate of Evans*, 901 P.2d 1138, 1140 (Alaska 1995).

5. *See Bishop v. Municipality of Anchorage*, 899 P.2d 149, 153 (Alaska 1995).

6. *OSG Bulk Ships*, 961 P.2d at 403 n. 6.

7. AS 43.05.275 provides:
   *Credit and refund claims.* (a) Except as provided in AS 43.20.021, a claim for credit or refund of a tax under this title for which a taxpayer is required to file a return or pay a tax may be filed by the taxpayer
   (1) before the later of
   (A) three years from the time the return was filed; or
   (B) two years from the time the tax was paid; or
   (2) within two years from the time the tax was paid, if no return was filed.

(b) If the department and the taxpayer have consented to extend the period for assessment of tax as provided in AS 43.05.260(c)(3), a tax refund claim may be filed at any time before the expiration of the period agreed upon.
AS 43.05.260(c)(3) provides:
   [I]f, before the expiration of the time prescribed in this section for the assessment of a tax imposed by this title, both the department and the taxpayer have consented in writing to the assessment after the expiration of the time, the tax may be assessed at any time before the expiration of the period agreed upon; however, the period agreed upon may be extended by a subsequent agreement in writing made before the expiration of the period previously agreed upon.

8. 26 U.S.C. §§ 1–9833 (1998).

Internal Revenue Code have full force and effect under this chapter unless excepted to or modified by other provisions of this chapter.

Louisiana–Pacific maintains that the incorporation of the IRC includes the portion of the Code dealing with the statute of limitations for claiming refunds, 26 U.S.C. § 6511(c).

When a taxpayer and the IRS agree to waive the statute of limitations for federal taxes,[9] 26 U.S.C. § 6511(c) extends the statute of limitations for refunds as well.[10] A taxpayer waives the statute of limitations by executing a Form 872, which Louisiana–Pacific did on January 25, 1995 for tax years 1988, 1989, and 1990 and on December 13, 1995 for 1991. Louisiana–Pacific argues that because the state tax scheme incorporates this portion of the IRC, its agreements with the IRS—waiving the federal statute of limitations for federal taxes—effect a waiver of the state statute of limitations for state taxes. Louisiana–Pacific maintains, therefore, that its claim for a refund of Alaska state income tax was timely. Thus, the issue before us is whether agreements between the IRS and the taxpayer waive the state statute of limitations for state income taxes.

A. *Applicability of Federal Waiver Agreements to State Income Taxes*

In *Hickel v. Stevenson*, we addressed the issue of whether a waiver agreement between the IRS and a taxpayer tolls the statute of limitations for state taxes.[11] We concluded that waiver agreements between the taxpayer and the IRS did stay the statute of limitations for Alaska state taxes:

[The exception in 26 U.S.C. § 6501(c)(4)] was applicable as to [the taxpayers'] federal income tax liability because of the waivers that the federal government secured

from [the taxpayers] which permitted the United States to assess additional taxes after the three-year period of limitation had expired. Such exception was also applicable as to [the taxpayers'] Alaska income tax liability because of the incorporation by reference in the Alaska law of the provisions of the Internal Revenue Code. By reason of the express adoption of the provisions of the Internal Revenue Code relating to an exception to the three-year period of limitation, the effect of [the taxpayers'] waiver of the federal period of limitation for assessment and collection of taxes was to effect a like waiver of such period as to the assessment and collection of the additional Alaska tax.[12]

The State presents two arguments asserting that our decision in *Hickel* is not controlling in this case. First, the State argues that at the time of our decision in *Hickel*, Alaska's income tax was dependent on federal tax, and it "simply ma[de] sense to allow the State to assess additional tax due as a result of the federal audit." The State contends that statutory revisions have abrogated our holding in *Hickel*. Second, the State argues that the adoption of state waiver provisions in AS 43.05.275 and AS 43.05.260, enacted after the *Hickel* decision, require an agreement with the State to stay the statute of limitations.

In its first argument, the State contends that because our decision in *Hickel* relied upon the former AS 43.20.200(b),[13] the 1975 amendments to that statute abrogate our holding in that case.[14] When we decided *Hickel*, AS 43.20.200(b) read: "The same period of limitation upon the assessment and collection of taxes imposed under this chapter and the same exceptions to it shall apply

9. *See* 26 U.S.C. § 6501(c)(4).

10. 26 U.S.C. § 6511(c) provides:

If an agreement under the provisions of section 6501(c)(4) extending the period for assessment of a tax imposed by this title is made within the period prescribed in subsection (a) for the filing of a claim for credit or refund—
(1) Time for filing claim.—The period for filing claim for credit or refund or for making credit or refund if no claim is filed, provided in subsections (a) and (b)(1), shall not expire pri-

or to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement or any extension thereof under section 6501(c)(4).

11. 416 P.2d 236, 238 (Alaska 1966).

12. *Id.*

13. *See id.*

14. *See* Ch. 70, § 10 SLA 1975.

as provided under section 6501, section 6502(a), and section 6503(a) of the Internal Revenue Code of 1954." [15] The legislature subsequently amended the statute. One alteration removed the subsections from the referenced IRC provisions,[16] and a second added an additional sentence.[17] Now, AS 43.20.200(b) states:

> The same period of limitation upon the assessment and collection of taxes imposed under this chapter and the same exceptions to it shall apply as provided in 26 U.S.C. [§§ ]6501—6503 (Internal Revenue Code). In the case of additional tax due by reason of a modification, recomputation, or determination of deficiency in a taxpayer's federal income tax return, the period of limitation on assessment commences from the date that the notice required in AS 43.20.030(d) is filed, and if no notice is filed the tax may be assessed at any time.

The State argues that by including the second sentence and the "by reason of" language in the 1975 amendment, the legislature intended to limit additional state assessments to situations in which additional tax is due "by reason of" a federal audit. Although the second sentence does address situations where modification of tax liability occurs after a federal audit,[18] the provision is a supplement to the specifically incorporated IRC provisions rather than a replacement for them. The first sentence of AS 43.20.200(b) still allows the State to assess tax during the time prescribed by the federal waiver; there has been no material change since the *Hickel* decision.[19] The second sentence simply requires taxpayers who have their federal liability modified to notify the department or be subject to a subsequent assessment of state taxes at any time. It does not otherwise

invalidate the effectiveness of federal waivers for state law purposes.[20] We conclude that the modifications to AS 43.20.200(b) do not prohibit the State from assessing additional tax, or a taxpayer from claiming a refund, while a federal waiver of the statute of limitations remains effective.

The State's second argument is that the state statutory provisions allowing for the extension of the state statute of limitations by agreement create an exception to Alaska's incorporation of the IRC. Alaska's statutes allow waiver agreements entered into between the State and taxpayers to extend the state statute of limitations. Alaska Statutes 43.05.275(b) and 43.05.260 require both the taxpayer and the Department to consent to an extension. Alaska Statute 43.05.260(a) provides:

> Except as provided in (c) of this section and AS 43.20.200(b), the amount of a tax imposed by this title must be assessed within three years after the return was filed, whether or not a return was filed on or after the date prescribed by law. If the tax is not assessed before the expiration of the three-year period, proceedings may not be instituted in court for the collection of the tax.

Alaska Statute 43.05.260(c)(3) provides:

> [I]f, before the expiration of the time prescribed in this section for the assessment of [income tax], both the department and the taxpayer have consented in writing to the assessment after the expiration of the time, the tax may be assessed at any time before the expiration of the period agreed upon.

And AS 43.05.275 provides:

> (a) Except as provided in AS 43.20.021, a claim for credit or refund of a tax under

15. *Hickel,* 416 P.2d at 238.

16. *See* Ch. 68, § 4 SLA 1987.

17. *See* Ch. 70, § 10 SLA 1975.

18. We addressed such a situation before the legislature modified AS 43.20.200(b) in *Stevenson v. Burgess,* 570 P.2d 728, 730 (Alaska 1977). In *Burgess,* the federal government assessed additional liability for tax years 1965–66 in 1972. But the State did not receive notice of the additional liability until after the federal waivers had expired. We held that the taxpayer was estopped from asserting the statute of limitations because

the taxpayer had failed to notify the Department as required by statute. *See id.* at 733. The second sentence of AS 43.20.200(b) squarely addresses that situation.

19. 416 P.2d at 238.

20. In fact, since the 1975 amendment, the State Department of Revenue has held the position that a federal waiver is valid for state taxes. *See In re Amoco Prod. Co.,* Department of Revenue Decision 89–066, at 3 (Oct. 19, 1989).

this title for which a taxpayer is required to file a return or pay a tax may be filed by the taxpayer

(1) before the later of

(A) three years from the time the return was filed; or

(B) two years from the time the tax was paid; or

(2) within two years from the time the tax was paid, if no return was filed.

(b) If the department and the taxpayer have consented to extend the period for assessment of tax as provided in AS 43.05.260(c)(3), a tax refund claim may be filed at any time before the expiration of the period agreed upon.

Although the state waiver provisions require an agreement between the taxpayer and the Department, both contain exceptions that refer to the incorporation of certain provisions of the IRC.[21] In turn, as already discussed, the IRC includes provisions for waiver of the federal statute of limitations. The State argues that the references to the IRC do not mean that federal waivers suffice to extend the state statute of limitations.

We disagree. Significantly, the provisions of AS 43.05.260 and AS 43.05.275 regarding the statute of limitations and written agreement to extend that statute do not eliminate the first sentence of AS 43.20.200(b), which incorporates specific IRC sections, those concerning extension of the limitations period for assessment. We interpret the references to the IRC contained in AS 43.20.200 and 43.20.021 as making waiver agreements between the IRS and the taxpayer effective for the purpose of extending the state statute of limitations. The State has not explained convincingly what the references to the IRC mean if they do not allow federal waiver agreements to be effective for state tax purposes. Citing AS 43.20.021, the State argues that "[t]he statutory scheme anticipates that some of the incorporated provisions of the IRC will be superfluous if they are 'excepted to or modified by [other provisions of *this*

*chapter*].' " (Emphasis added.) However, AS 43.05.260 and 43.05.275 appear in chapter 5 of Title 43, while AS 43.20.021 appears in chapter 20 of Title 43. The modifications and exceptions to which AS 43.20.021 refers therefore do not include AS 43.05.260 and 43.05.275.

■ Moreover, when we engage in statutory construction, we must, whenever possible, interpret each part or section of a statute with every other part or section, so as to create a harmonious whole. We must also presume that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous.[22] We therefore decline the State's invitation to interpret the references to the IRC in 43.20.200 and 43.20.021 in a way that would make them superfluous. We conclude that the incorporation of certain provisions of the IRC into Alaska law makes federal waivers effective for Alaska state taxes.

B. *References to the "Secretary" or the "Service" in the Incorporated IRC Cannot Uniformly be Read as Referring to the State Department of Revenue or to the State Revenue Commissioner.*

■ In asserting that Alaska requires a taxpayer to agree with the Department to waive the state statute of limitations, the State argues that the incorporated IRC should be read to require an express agreement between the taxpayer and the State. To reach this result, the State argues that both AS 43.05.275(b) and the incorporated IRC provisions 26 U.S.C. § 6501(c)(4) and 26 U.S.C. § 6511 require an agreement with the Department to waive the statute of limitations. The State contends that where the IRC refers to the "Secretary of the Treasury" this court should interpret that to refer to "the Commissioner of the Alaska Department of Revenue." Although the State's substitution argument finds some support in

---

**21.** *See* AS 43.05.260(a) ("Except as provided in ... AS 43.20.200(b)...."); AS 43.05.275(a) ("Except as provided in AS 43.20.021...."). AS 43.20.200(b) and AS 43.20.021 both incorporate by reference provisions of the IRC.

**22.** *See Kodiak Island Borough v. Exxon Corp.,* 991 P.2d 757, 761 (quoting *Rydwell v. Anchorage Sch. Dist.,* 864 P.2d 526, 528, 530–31 (Alaska 1993)).

a footnote in *Wien Air Alaska, Inc. v. Department of Revenue,*[23] we reject the State's position.

*Wien* does not require us to interpret references in the incorporated IRC to federal officials to mean state officials. In *Wien*, we addressed the issue of whether a letter from the Department containing a favorable ruling could be altered retroactively.[24] We interpreted the incorporated IRC as allowing the Department to correct mistakes in the application of the tax law and to do so retroactively.[25] We looked at the context of incorporated IRC § 7805(b) and decided that the reference to the U.S. Secretary of the Treasury's power to decide which rulings and regulations had retroactive effect granted the State Department of Revenue that power.[26] We held that, in the particular circumstances of *Wien*, the reference in 26 U.S.C. § 7805(b) to the "Secretary" may be used to refer to the Commissioner of the Alaska Department of Revenue under AS 43.20.021(a).[27]

We decline the State's invitation to extend that holding to require that in every place in which the "Secretary" appears in the incorporated IRC, the "Commissioner" must be substituted. Instead, we confine our statement in *Wien* to the peculiar circumstances of that case. As Louisiana–Pacific points out, a rule that calls for blanket substitution would lead to untenable results and a major revision of Alaska's tax policies. Louisiana–Pacific cites 26 U.S.C. § 1362 as an example. This provision allows a corporation to elect status as an "S corporation" and grants the Secretary the power to "determine[ ] that there was reasonable cause for [a] failure to make [a] timely election."[28] If a blanket substitution rule were in place, then a sepa-

rate determination would need to be made by the State Department of Revenue. This reading would greatly complicate tax collection procedures in Alaska. Any time the IRC called for a determination by the Secretary, Alaska taxpayers could be required to seek a ruling from the Department as well, greatly increasing the burden on the Department and taxpayer. We conclude that such a complicated tax system is contrary to the intent of the legislature.[29]

C. *If Louisiana–Pacific Executed Federal Waivers Restricted to Issues Unrelated to the Calculation of its Alaska Tax, then the Federal Waivers Should Not Effect a Waiver of the State Statute of Limitations.*

The waiver agreement between the IRS and Louisiana–Pacific covering tax years 1988–90 was restricted to a specific issue,[30] which Louisiana–Pacific concedes is unrelated to the theory under which Louisiana–Pacific claims its refund. Although the superior court did not reach the question whether the restricted waiver could toll the statute of limitations for wholly unrelated issues, we believe that it is necessary to reach that question in light of our conclusion that general federal waivers are effective for state tax purposes.

Congress has recognized the use of restricted waivers, having called for the IRS to notify taxpayers that the limited waiver is an available option:

Notice to taxpayer of right to refuse or limit extension.—The Secretary shall notify the taxpayer of the taxpayer's right to refuse to extend the period of limitations, or to limit such extension to particular issues or to a particular period of time, on

**23.** 647 P.2d 1087, 1093 n. 5 (Alaska 1982).

**24.** *Id.* at 1092.

**25.** *See id.* at 1093–96.

**26.** *See id.* at 1093 n. 5.

**27.** *See id.*

**28.** 26 U.S.C. § 1362(b)(5)(B) ("[T]he Secretary determines that there was reasonable cause for the failure to make such timely election, the

Secretary may treat such election as timely made for such taxable year . . . .").

**29.** *See* AS 43.20.160(c) ("The department shall apply as far as practicable the administrative and judicial interpretations of the federal income tax law.").

**30.** When it signed the waiver, Louisiana–Pacific agreed that the amount of any deficiency or overassessment would be limited to that caused by adjustments to prior tax returns of Santa Fe Industries, Inc.

each occasion when the taxpayer is requested to provide such consent.[31]

In addition, the restricted waiver is recognized in the Internal Revenue Manual [32] and in several judicial decisions.[33] And Louisiana–Pacific agrees that a restricted federal waiver prevents the IRS from assessing additional tax for reasons unrelated to those in the waiver. Louisiana–Pacific instead encourages this court to focus on the question of whether or not "the very existence of a federal waiver, not any limitations thereon which might be involved, holds open the Alaska statute of limitations for refunds or assessments relating to purely *state* issues."

■ The State argues that the restriction in the federal waiver should be given effect in determining the due date of the state refund application. The State reasons that when Louisiana–Pacific signed the restricted waiver it agreed that "the amount of any deficiency or overassessment is to be limited to that resulting from any items affected by continuing tax effects caused by adjustments to any prior tax return of Santa Fe Industries, Inc." Because federal courts use contract principles to determine the scope of a federal waiver,[34] the State argues that it would be inconsistent with Louisiana–Pacific's federal waiver agreement to allow a state refund on unrelated issues. We agree. Alaska's statutes require that "[t]he depart-

ment shall apply as far as practicable the administrative and judicial interpretations of the federal income tax law." [35] Thus, we conclude that the restricted federal waivers limit the scope of what may be claimed as a refund of state tax or what the State may assess.[36] A restricted waiver is only effective for state adjustments that are reasonably related to the issues covered by the restricted federal waiver. Sound policy favors a tax system where a limited federal waiver does not expose a taxpayer to unforeseen state tax liability. The same analysis applies to refunds. We therefore conclude that a restricted federal waiver extends the state statute of limitations only so far as the issues covered in the restricted waiver would affect state tax liability.

## V. CONCLUSION

Because Alaska's tax statutes incorporate the IRC provisions which call for the waiver of the statute of limitations by agreement with the IRS, such waivers are effective for state tax purposes. But a restricted federal waiver can only extend the state statute of limitations for assessment or refund to the issues covered in the restricted waiver. Thus, while the statute of limitations for claiming state refunds was extended based on the federal waivers for those years in

**31.** 26 U.S.C. § 6501(c)(4)(B).

**32.** *See* 2 Internal Revenue Manual § 4541.71(1)-(6); § 4541.72.

**33.** *See Smith v. Commissioner,* 925 F.2d 250, 253 (8th Cir.1991); *Kinsey v. Commissioner,* 859 F.2d 1361, 1362, 1364–65 (9th Cir.1988); *Grunwald v. Commissioner,* 86 T.C. 85, 89, 1986 WL 22077 (1986); *Piarulle v. Commissioner,* 80 T.C. 1035, 1042, 1983 WL 14837 (1983).

**34.** *See Piarulle,* 80 T.C. at 1042 (citing *Stange v. United States,* 282 U.S. 270, 51 S.Ct. 145, 75 L.Ed. 335 (1931)).

**35.** AS 43.20.160(c).

**36.** It should be noted that in a 1982 adjudication, the Department of Revenue adopted the opposite rule, determining that federal waivers also extend the statute of limitations for state assessments, even on issues not involved in the federal waivers. *See In re Acme Oil Co.,* Department of Revenue Decision 82–48, at 39–40 (Oct. 26,

1982) (holding that limited federal waivers "were effective for all Alaska purposes"). In addition, the Audit Division of the Department advanced this contradictory rule in the *In re Amoco* proceeding, although the hearing officer ultimately decided the issue on other grounds. *See In re Amoco Prod. Co.,* Department of Revenue Decision 89–066, at 3, 11–14 (Oct. 19, 1989). The Department is not, however, bound to follow its *Acme* rule here because it has since disclaimed the policy of relying on federal waivers for state taxation purposes. For example, in its Oil & Gas Company Audit Manual of March, 1994, the Department takes the position that federal waivers "should not be relied upon for making an assessment in cases where the Alaska statute has otherwise expired unless there are compelling reasons for doing so." The Department's Audit Manual also recognizes that restricted federal waivers limit the scope of corresponding state waivers: "[a]n open statute [of limitations] by reason of a federal waiver does not limit the resulting Alaska statute [of limitations] *except where the federal waiver is restricted as to specific issues.*" (Emphasis added.)

430

which the waiver agreements were entered, Louisiana–Pacific is precluded from claiming refunds on any issues other than those specified in the restricted federal waivers. We therefore REMAND for further proceedings in light of our opinion.